06-5096 Chapman Law v. Greenleaf Construction v. United States Thank you, Mr. Rubicon. Mr. Priefer. Thank you, Your Honor. May it please the Court, I am here representing Greenleaf Construction Company, and to set the scorecard straight, Greenleaf joins the Department of Justice in opposing Chapman's appeal, and we oppose the Department of Justice in its cross-appeal. In other words, we support Judge Wheeler's decision in all respect as being a well-reasoned, well-supported decision. But I thought you were not taking a position on the attorney's case issue or on the motion to dismiss on the motion's issue. We are. The only objection that the Department of Justice raised with regard to our opposition was a waiver argument, and that waiver argument, if you'd like me to address it right now, deals with—they raise it on page 3 of their December 11th reply brief saying that Greenleaf opposed its opportunity to write to oppose the cross-appeal. That's strictly a procedural argument. At the time, this was after GAO ruled on Greenleaf's protest in Greenleaf's favor, and I assumed that HUD would follow Greenleaf—or GAO's recommendation to allow Greenleaf to bid on the procurement. So did Judge Wheeler. We both thought that the HUD people would allow Greenleaf to participate. It turned out we were both wrong. HUD decided to proceed with only Chapman and not with Greenleaf in the procurement. But that's on separate views, though, right? Yes. That's being protested. But what is your response to the government's position that—on their theory that if this were a dismissal rather than a judgment, nobody gets attorneys for this? Well, my position on that argument is that they're wrong. There is an existing case in controversy. One of the complaints that Greenleaf raised before Judge Wheeler was we wanted the award of the contract, and we also wanted HUD to follow GAO recommendation. They did neither. They did an alternative thing. So when DOJ argues that they put the parties back where they were on April 19, that's not accurate. But is that what the judge did in his final ruling? No. He assessed the reasonableness of HUD's corrective action. He took a very narrow view by assessing the reasonableness of HUD's corrective action. But I think—on Judge Newman's point, I think the difference between the government's main deal here with each of these is the difference between what the judge did and what the alternative the government is arguing for, which is granting a motion to dismiss, which makes the case move. That's the difference that will define whether or not they're each of these arguments. Right. What is your—do you have a position on that issue? Our position is this was not appropriately a case for a motion to dismiss. This was one which should have gone to the judgment because— But look, in your brief on page 33, maybe I'm confusing it, but you have a whole heading that says Greenleaf does not object to the United States renewing motion to dismiss. Is that something different? No, it's correct. At that point in time, we feel we're still going to be able to cover each of these if we want. We haven't decided whether we're going to even pursue them, actually. But what we're here arguing today with regard to the motion to dismiss is at that time, it was not an appropriate motion to dismiss because what the court reviewed was the alternative relief offered by HUD. There was still a case in controversy at the time Judge Wheeler ruled. And whether or not it's a motion for the judgment or a motion to dismiss, we feel that it's not appropriate for a motion to dismiss. There was still jurisdiction. There was still a case in controversy. And the Department of Justice has taken this position that all the parties were placed in the same position they were before. They were not. HUD came up with an alternative form of relief. May it please the court, I'd like to first address what Mr. Chapman's appeal deals with. And that really concerns the applicability of the SBA's original, excuse me, subsequent decision from OHA, Office of Hearings and Appeals, with regard to the size of Greenleaf. If you go back in time to July 8th of 2004, HUD originally awarded this contract to Greenleaf. A size appeal was then filed by Chapman 10 days later, and the area office ruled in favor of Chapman that Greenleaf was not small. Greenleaf, we then filed an appeal with SBA's Office of Hearings and Appeals. That decision did not come out until February of 2006. And that decision is what we're relying on to make the argument that the award decision to Chapman had not occurred, because you cannot have an award decision without a responsibility of determination. And as we argued in our brief, and Judge Wheeler noted, award cannot be made without a responsibility of determination. And HUD admits that a responsibility of determination had not been made, and in fact GAO ordered that a responsibility of determination be made. That was one of their recommendations. Also, OHA does not issue advisory opinions. They only issue opinions that apply with regard to a particular contract. And by virtue of the fact that they issued this opinion, it must apply to this procurement, because that would be a violation of their own statute. And finally, if this were, if Chapman's appeal were allowed to proceed, the consequence would be someone can file an unfounded or an unsuccessful size protest and garner the benefits of it. What we're trying to say is, look, if SBA comes in and ultimately finds that you are indeed a qualified small business, that's going to apply to this procurement, and they're bound by it. So for those reasons, and also there's the final thing that Judge Wheeler pointed out is a preference for competition. For those reasons, we feel that we're entitled to stay within the procurement and participate. And indeed, as it turned out, actually HUD did, after Judge Wheeler intervened, HUD did allow both parties to submit revised proposals. With regard to Department of Justice Cross Appeal, just a couple of brief points. As I mentioned earlier, Greenleaf's third prayer for relief was to have the contract awarded to it. That did not happen, and despite the language that the contracting officer issued, which was with regard to allowing for a reassessment of re-evaluation, we still had a case in controversy. In essence, what HUD did was to come up with an alternative form of relief. So the core question here is, what sort of role does the court have when an agency offers alternative relief? It's our position that what HUD basically offered was a different form of relief than we requested. If Department of Justice's cross motion is granted, it means that an agency can merely say, I'm considering taking corrective action, and that would be sufficient for the agency to come in via Department of Justice and move to dismiss the case and divest the court of jurisdiction. It's the equivalent of a contractor coming in with a claim, and the government, the agency saying, we agree with you on entitlement, but we're not going to tell the court what the quantum is, and then unilaterally dismiss the case. That's the equivalent of what Department of Justice is asking you to do today. And it's our position that that would result in a narrowing of the court's jurisdiction. Judge Wheeler correctly noted in his decision that the court is entitled to narrowly review the scope of the corrective action to assess whether it's reasonable. It's a very narrow scope. In the cases he cites through the Mantec and the GSC contracting service decision, he mentioned those and he was mindful that he was not substituting his judgment for the judgment of the agency. Rather, he was just assessing the reasonableness of the action. And as he pointed out, he said, a mere proposal of corrective action on some explanation of the proposed plan is insufficient. And that's what he felt was important enough to give him the right to go in and ask the agency to explain, what do you mean before I'm going to grant Department of Justice the right to dismiss the case for lack of jurisdiction? In conclusion, I believe that granting the Department of Justice's motion to dismiss would establish a dangerous precedent for contractors that will prevent protesters from obtaining any meaningful relief from the court of federal claims. I believe that Judge Wheeler's decision strikes a fair and balanced approach by limiting the court's inquiry to a determination of the agency's proposed corrective action. And moreover, that limiting the role, as the Department of Justice suggests, would be tantamount to giving the agency's ability to end run protest processes at the court of federal claims. Thank you. Thank you, Mr. Brayden. Mr. Del Sordo, you have some time. Thank you, Your Honor. To debate the timeline of these proposed corrective actions, I think it's important to understand where Chapman's coming from and the problem of Judge Wheeler's actions. As the government's counsel noted, after we filed the protests, and then there was a series of depositions and development on the record, the government announced, we're going to take corrective action, dismiss this case. But they did not say what they were going to do. So my client and Greenleaf both filed opposition to the motion of dismissing. Look, we can't go off into the dark not knowing what's going on. You need to explain what you're going to do. And that's what Mr. Brayden was just discussing there. So then the government came back and said, okay, this is what we're going to do. We're going to reinstate this procurement. We're not going to cancel the procurement. We're not going to go out with a totally new solicitation. We're going to hold discussions with Chapman to have them address the concerns of the GAO from the January 2006 decision. And then we will decide, basically, we'll do what the GAO had recommended us to do. That was fine. We were good with that because then that was my client stood alone and he was being evaluated by himself and appropriately upholding the concept that he was the only small business that was in existence at the time of contract award, which was- But now you've lost the award. Right. Well, we had it before also. So you don't stand to, even if you were to prevail, you would be in the same position with the exception that there's a protest pending. So in case that doesn't work out for you, you get it. But if somehow, so right now you don't know whether it can make any difference whatsoever. But that's entirely the point, Your Honor, because the Comptroller General has not issued a decision. If the Comptroller General says HUD's action was appropriate and my client was appropriately awarded the contract, we can go forward. That does not preclude the possibility of Greenleaf then going to the Court of Federal Claims and saying, essentially, we litigated that point. However, if the Comptroller General reverses HUD or they go to the Court of Federal Claims and the Court of Federal Claims says, no, you can't do that, your decision becomes important because if you rule that the agency's corrective action that Judge Wheeler stepped in and said, no, you cannot do that, you cannot just have Chapman in the competitive range, to remove that determination would once again leave us as the only small business in the competitive range. So that is why it's important that Judge Wheeler's decision, his injection of himself into the process, needs to be overturned because it was not appropriate at that point. He was substituting his judgment for the contracting officer's. He took a look at the regulatory scheme and he decided that one portion of the regulatory scheme, the secret requirements for competition was more important than the clear dictates of FAR 19.302, which says very clearly that any decision by the SBA that comes after contract reward is irrelevant to the procurement of hand. So that's why it's important to not have Judge Wheeler's stopping of what the contracting officer's fully explained corrective action needs to be overturned. That is the concern that we have here, that the government's corrective action as explained, that they were going to open up discussions with Chapman only as the only small business in the competitive range. That should not have been overturned by Judge Wheeler. This becomes important because as Mr. Britton said, and as the government's counsel has said, that this becomes an issue of what the government can, what the contracting officer can do when it comes to resolving protests. And if you all have any further questions, I have nothing further to say. Thank you. Okay. Thank you, Mr. Wilson. Mr. Erie, you are required to have a little time. Thank you, Your Honor. I want to point out that every single party has waived its challenge to our cross-appeal, and I want to explain why. None of the parties raised a justiciable objection to our cross-appeal because, as the court's already noted, Chapman never raised any objection to our cross-appeal in its reply brief. Now, is this rebuttal, or are you making some new points? I'm rebutting two of the arguments that I heard Greenleaf make, and one, actually three arguments that I heard Greenleaf make. Okay. You can only rebut the cross-appeal. Yes, that's right. This relates to the cross-appeal in that it discusses whether there were any objections to it. NCB, which is the other party in this case, shouldn't even have standing because it isn't competing for the contract. Greenleaf, twice in this proceeding, has specifically argued that the agency's initial corrective action mooted all the parties' requests for a relief, and I'm talking about the initial corrective action that didn't explain whether discussions would be held with Chapman or Greenleaf or anyone. Do you understand what I asked Greenleaf's counsel about on page 33, where they referred to the United States with a new motion to dismiss on June 7, 2006? Is that the motion to dismiss that you want us to reinstate here in lieu of the court's ruling, or is that a different motion to dismiss? That's the second motion to dismiss. Is that different? That is different from the first motion to dismiss, which I'm discussing right now. With respect to the initial motion to dismiss, the initial corrective action, Chapman stated at supplemental appendix pages 27 and 28 that all of its requests for relief were mooted at that point, and it had no objection to our motion to dismiss. Second, at page 33 of the brief, as Your Honor has just mentioned, if Greenleaf has no objection to dismissal, then it's unclear how it has any ability to challenge a cross-appeal that's requesting dismissal. Greenleaf essentially is saying that the initial corrective action was somehow insufficient because it didn't say what the agency would do next. But the judge, by requesting what the agency would do next and refusing to rule on a motion to dismiss, despite the fact that no case for controversy existed at that point, has extended its jurisdiction to essentially supervise the contracting officer, and that was what was improper here. Finally, with respect to the notion that Greenleaf states that there was still a remaining case for controversy at the time that the initial corrective action was taken, the only thing that Greenleaf has stated with respect to that is it's pointed to its request for relief that it be awarded the contract. That was obviously not criticizable and, in any event, premature after the re-evaluation going forward. And its briefs have provided some other reasons for the reasons that we stated in our briefs. Those have nothing to do with Greenleaf's request for relief. Thank you, Your Honor. Thank you. Thank you all. Case is taken into submission. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock. Thank you.